I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have interesting cases. Judge Keenan and I are particularly honored to have our friend Judge Gibney assisting us in the handling of these cases today. The first case is Hercules-Torres v. Jefferson Sessions. Mr. Winograd? I mispronounced that. Winograd, Your Honor. Winograd. I mispronounced most everybody's name, it seems like. I'm sorry. Good to have you here, sir. Thank you, Your Honor. Judge Keenan, may it please the Court. Under the Immigration and Nationality Act, asylum applicants must establish that a protected ground was or would be at least one central reason for the persecution they faced or fear in their native countries. This case presents three questions concerning that requirement, and unless the Court prefers otherwise, I would like to address them in the reverse order of how they were presented in the brief. So I would like to address first why this Court should not approve the claims. Second, while my client established that his religion was a central reason why he was persecuted in El Salvador. Mr. Winograd, let me jump in and ask you. If religion wasn't a reason at all, then the one central reason analysis doesn't apply, does it? So it seems to me that it's more logical perhaps for you to tell us why his religion was a reason, or at least why the decision was clearly wrong on that issue. Sure. Well, we certainly think it was, if not a central reason, certainly a reason. To begin with, the immigration judge found my client credible, so his testimony must be taken as true. It's undisputed that he attended church three to four times per week, and when gang members tried to recruit him, he cited his Christian faith each time he refused their advances. And I don't mean to cut you off, but what I'm worried about in this case, and these cases are very sympathetic on the facts, so I don't mean to suggest otherwise. But on the law, what I'm worried about is that all of the evidence of religion is on his side. In other words, he's saying, I'm not going to join the gang because of their religion. But what is the evidence on the other side that shows that the gang was motivated by his religion? I think we've got to look at that. Yeah, and that was exactly what I was about to say. Immediately before the act of persecution took place, the apparent ringleader of the gang said, quote, that he did not believe in anything, and that it was better to be with the gang than to be a Christian. So our point is that gang members persecuted our client not just because he refused to join the gang, but because he refused to subjugate his religious beliefs. What's the standard of review for the issue of what the gang's motive was? Sure. This court has applied substantial evidence review on the question of motive, on the specific question of motive. We raise a separate argument about whether a protected ground was a central reason, whether the board should have applied Genova review, because it's a mixed question. So our merits argument is based under the assumption that this court is applying substantial evidence review. But if the court were to find that it's a mixed question to which the board should have applied Genova review, that might affect the standard that this court would apply. In looking at that question, I think it's also very important to make clear the precise point at which my client was persecuted. Contrary to what the immigration judge, the board, and now the government have suggested, my client does not claim that he was persecuted merely by being asked to join a gang. His contention is that he was persecuted after he refused to join a gang. So the question is not why the gang targeted my client for recruitment, but why they forcibly tattooed him and threatened to kill him. We think his religious beliefs were a central reason. Now the gang leader's statement about I don't believe in anything, that was the third time that the gang had approached Hercules? The third time, but the first time that the ringleader was involved. If I could return to the withholding argument, regardless of how the court resolves the asylum claim, we ask it to extend the one central reason requirement to withholding claims. That decision conflicts with both the plain text of the statute as well as its legislative history, and thus does not pass muster under the first step of Chevron. Two features of the text make clear that Congress did not intend the one central reason requirement to apply to withholding claims. First, the requirement only appears in the statutory provision governing asylum claims. That's 8 U.S.C. 1158, and it is part of applicants' overall burden of establishing that they qualify as a refugee, which is a prerequisite for obtaining asylum. Withholding claims are governed by a different statutory provision, 8 U.S.C. 1231b3, which does not even mention the word refugee, and which says that applicants must demonstrate that a protected ground would be a reason that their life or freedom would be threatened. Second, and even more telling, when Congress enacted the Real ID Act, it declined to cross-reference the one central reason requirement in the provision governing withholding claims, even as it cross-referenced two neighboring requirements that were enacted at the very same time. So specifically, in 1231b3c, Congress cross-referenced clauses 2 and 3 of 1158b1b, which contained the newly enacted requirements relating to corroborating evidence and credibility determinations. But Congress did not cross-reference clause 1 of 1158b1b, which contains the one central reason requirement. So if Congress wanted the one central reason requirement to apply to withholding claims, it would simply have cross-referenced clause 1 at the same time that it cross-referenced clauses 2 and 3. Now, in matter of CTL, board acknowledged that Congress did not cross-reference clause 1, but concluded that Congress's failure to do so meant that Congress was silent with respect to whether the one central reason requirement applied to withholding claims. As the Ninth Circuit recognized, that conclusion was based on a false premise. The fact that Congress failed to cross-reference clause 1 is precisely what demonstrates that Congress did not want the requirement to apply to withholding claims. If Congress wanted the one central reason requirement to apply to withholding claims, it either would have cross-referenced clause 1, or perhaps it would have added the modifier central between the terms A and reason in 1231b3c. That Congress did neither demonstrates that it did not intend the central reason requirement to apply. That's what Justice Scalia's book about statutory interpretation says, isn't it? I believe so, Your Honor. I believe this would implicate the canon of negative implication. And given how clear the text of the statute is, we don't think there's a need for the court to even consider the legislative history. But should the court wish to do so, we think the legislative history only bolsters our position. The one central reason requirement is mentioned three times in the conference report, and those references are on pages 41 and 42 of our opening brief. Each reference was made in connection with asylum applications. The conference report then contained a separate section on withholding claims in which it acknowledged the fact that it had cross-referenced clauses 2 and 3 of section 1151b1b, the provisions relating to corroborating evidence and credibility determinations. But like the statute itself, the portion of the conference report addressing withholding claims made no mention of the one central reason requirement. So we think the only conclusion that can be drawn from it is that Congress declined to incorporate the one central reason requirement into the withholding provision. Now, the Attorney General argues that Congress was somehow precluded from cross-referencing Clause 1, the one central reason requirement, because it relates to the definition of refugee. But if that was true, Congress could not have cross-referenced Clause 2, which also relates to the definition of refugee. The Attorney General also says that following the plain text of the statute would make things more complicated because immigration judges could not reflexively deny withholding claims after finding an applicant did not qualify for asylum. But when the text of the statute is clear, the mere fact that it might make life more difficult for the administering agency is not a reason to disregard that text. The only instance when courts may disregard the plain text of a statute is when it would create an absurd result that Congress could not have possibly intended. Here, as the Ninth Circuit recognized, there is nothing absurd about employing a different nexus requirement in the withholding context. But you agreed there that we don't even get there if the motive issue is resolved against you. I don't think so, Your Honor, because the Board had no reason to How do we get there if we find that there is no evidence or that the substantial evidence supports the finding that the petitioner failed to establish the nexus between his religion and I'm sorry, go ahead. If the Court believes that withholding claims are not subject to the one central reason requirement, then the proper remedy under the ordinary remand rule would be to send the case back for the Board to consider the matter in the first instance under the correct standard, under the a reason standard. And the substantial evidence, and if so, then the standard that the Board would be applying would be more forgiving than the substantial evidence standard that this Court would be applying. That is precisely the result that the Ninth Circuit reached in Barajas-Romero. It said we are not going to opine on whether the facts would satisfy the a reason standard. It is the Board's prerogative to address that question in the first instance. But if it wasn't a reason at all, there's no reason to send it back. You're asking us to assume that it was a reason and then have the Board review whether it qualifies as a one central reason. Isn't that what you, it seems to me you're making an assumption that it was a reason. Well, we think the record certainly supports that. We are making that assumption because. But is there anything in the record that Christians were being targeted, any other Christians? Well, Your Honor, we are not raising a pattern and practice claim. In any asylum claim, you're looking at why the applicant, if an applicant is raising a pattern and practice claim, yes, that would be highly relevant. But my applicant claims that he was singled out for persecution. So didn't he say he was singled out for recruitment? I thought he and Wilfredo both said they were singled out for recruitment. There's a difference between recruitment and persecution. As I was saying earlier, why the gang sought to recruit him is not relevant in this case. The only question is why the gang forcibly tattooed him and threatened to kill him and his family after he refused their advances. And our contention is that they only did that because he refused to subjugate his religious beliefs and the fact that he articulated his religious beliefs when he refused the gang's advances. So you're saying once they recruited him, then why did they persecute him? Exactly. Exactly. I think the agency conflated the inquiries here and was looking at why the gang sought to recruit him as opposed to why the gang persecuted him after he refused to join the gang. So your point is that while something could might not be a central reason, it would be easier to prove that it's a reason. It's kind of like a mixed motive case and discrimination case. Precise, Your Honor. And the standards, there's no dispute that the standards are different. They're not radically different, but they are different. If you look at this court's decision in Mengesha versus Gonzalez, 430 F3rd 142, that was before the Real Aid Act. And the court said the asylum applicant must prove that need only show that the alleged persecutor is motivated in part to persecute him on account of obstructed trade. But to agree with your position, Mr. Winograd, we're going to have to say the record compels the conclusion that religion was the reason, aren't we? On the asylum claim, yes. To grant our asylum claim, or at least if you reach the merits of the asylum claim, yes, you would have to find the record compels the conclusion. But not on the withholding claim. If the court finds that the one central reason standard doesn't apply, the correct remedy would be to remand for the board to apply the A reason standard, which is a lower standard and which the board has not yet had an opportunity to apply. Is it generally a cart before the horse type thing? Because if there isn't reason for asylum, then we have case after case that says you can't, you aren't able to establish withholding of removal. Yes, but those cases never squarely confronted the question of whether the nexus standard is the same. That is an open question in this circuit. I understand the question of law, but if it's a matter of fact the issue is resolved against you at the asylum level of proof, then haven't you lost as a matter of fact at the withholding of removal? No, I respectfully disagree, Your Honor, because the substantial evidence standard is much more restrictive than the standard that the board would apply on remand. The board would not have to find that we are compelled. The board would not have to be compelled to find that religion was a reason. The board, our position is that it would be applying de novo review, but even if it was applying clear error review, the board, under the ordinary remand rule, should get the first bite at that apple. The other claim that we raise with respect to the asylum claim involves the standard of review. We believe that the board should have applied de novo review rather than clear error review in determining whether my client was persecuted on account or whether my client's religion was a central reason why he was persecuted in El Salvador. And we think that's the case for two distinct reasons. First, in at least 10 published cases, the board has stated that it applies de novo review in determining whether the parties have satisfied the relevant burden of proof. We cite those cases in footnote two on page 20 of our opening brief. The text of the one central reason itself makes clear that Congress intended it to serve as an evidentiary burden. That provision states, quote, the burden of proof is on the applicant to establish that the applicant is a refugee. And that, yes. In this court's well-written decision in Turkson v. Holder, didn't the court say that motive is a classic factual question and then relied on the Crispin-Valadares case? And isn't that sort of, doesn't that preclude the argument you're making now? Your Honor, we think that there is a valid, albeit very narrow distinction that can be drawn between the question in mixed motive cases, what the persecutors' various motives were, on one hand, which would be a question of fact, and whether the protected ground was sufficiently important to qualify as a central reason on the other to which de novo review would apply. Ms. Bruckner? Good to have you here. Good morning, Your Honors. May it please the Court. My name is Patricia Bruckner, and I'm here on behalf of the Attorney General. As Judge Keenan alluded to, this Court does not even need to reach whether the one central reason standard applies to withholding because the Board correctly found that petitioner's religion was not even a reason for the gang's mistreatment of him, including the recruitment and the tattooing and the threat with the knife. A reasonable fact finder on these facts would not be compelled to find that religion was a motivating factor at all for the gang under Elias Zacharias and this Court's precedent, Timu. The record is clear that recruitment was the motive, and religion was only incidental to the gang's motive. There are numerous reasons for this in the facts, which, with the Court's indulgence, I'd like to walk you through. First, the gang targeted Hercules before he stated his religious objections. Each time he was approached, he cited his Christian religion. Well, but didn't the Board conclude that what the failure in proof was, that it was not a central reason? That's what it says on page three of the appendix. It says the respondent did not meet his burden of establishing that his religion was or will be at least one central matter for persecuting him. And if that's what he says, your opponent says that maybe it wasn't a central reason, but it was a reason. The Board specifically said it was not a factor. No, it said it was not a central reason. The standard that they applied was one central reason. They applied that to both asylum and withholding. But if you look at AR4, at the top paragraph, it says that the respondent acknowledged that gang members generally target students at his school, and there was no evidence that the gang members targeted Christians or that his religion was a factor in their recruitment efforts. The immigration judge also uses the a-factor language. So that's true, one central reason was the burden, but the Court went beyond that and said it wasn't even a reason at all. His affidavit also is very telling on the facts. He said the gangs try the hardest to recruit the students, they want control of the schools, they focus on the students because they're friends with other people, other young people from other areas to increase their ranks. His own testimony in immigration court, he said he didn't know why the gang tattooed him. This is at AR209. But maybe because he was a Christian or maybe because he was from a different town. He admitted the gang approached him because they wanted to recruit him for membership, AR228. He said they wanted him to report information in furtherance of their activities. He said they recruited young males because they're young, 236. His brother's testimony also helps the government's position. He said the gang targeted his brother, the petitioner, because members in his rural hometown kill each other and therefore need more members, AR250. So there's really no evidence in this record of gang animus against Christians. There's no basis for distinguishing between when the gang targeted petitioner, before they knew of his religion and after they knew of his religion. He mentioned his religion each time in refusing and he wasn't tattooed until the end. So mentioning his religion didn't increase the harm to him at all. He mentioned it throughout. So this case really is akin to Elias Zacharias. And the government asserts that the basic motive requirement for nexus, that the persecutor must know or believe the applicant has protective characteristic and be motivated by it, is not satisfied. This court's precedent is Saldarriaga. I would also like to address the petitioner's argument about the gang. The petitioner mentioned that I don't believe in anything, but it's better to be with the gang than to be with God. That still doesn't show any animus towards Christians. It doesn't show any animus? Is that what you said? That's correct. It does not. The gang leader is saying you should be with the gang and not with God, because he's trying to convince him to, he's trying to recruit him to his gang. He's not saying that Christians are evil or he's not disagreeing with the religion. In fact, a hypothetical, I think, would be helpful here. If he had said at that time, okay, I'm not a Christian, I'm something else, but I still don't want to join your gang, the record reflects that he still would have been tattooed and threatened, because the gang's motivation was recruitment. It wasn't animus against Christians. I'm happy to talk about the Barajas and matter of CTL issues. If the court does reach that issue under Chevron Step 1, we are able to determine congressional intent from the conference report in the record. I'm sorry, not in the record. When the statute is not plain on its face, congressional intent is the next thing we look at, as the court knows. And congressional intent must be given effect under cartosa fonseca. The conference report is very, very telling. The Congress intended a uniform standard on mixed motive cases throughout the country. It was dissatisfied with Ninth Circuit case law, which had a lower nexus standard, at least in part. It cited two cases, Briones and Borja. If the court looks at that Borja case, it applied to both asylum and withholding. The Ninth Circuit applied at least in part to withholding. And that dissatisfied Congress. And so, therefore, it doesn't make sense that Congress would have gone back to that lower a reason standard for withholding when it specifically cited Borja in its conference report. The report says nothing about different standards for asylum and withholding. Those two reliefs historically had the same standard. It would have been a big deal to change this foundational point if it was establishing different motive standards. It didn't say anything about it in the conference report. It listed the key differences between the two, and it said nothing about it. And if it were going to change this bulwark, it would have said something in the report. Congress spent three pages talking about the new one central reason standard for asylum. It didn't say anything about a reason, a reason for withholding, which would have been monumental, but it found no reason to talk about it. The government, as you saw in our briefing, made two arguments based on the text of the statute that are set out in our briefing. One is about the a reason only being in an introductory phrase, linking the new collaboration and credibility provisions to withholding. Again, the same point, this was a big deal. And if Congress intended to do it, they wouldn't have put it in an introductory phrase in a section that talks about credibility and corroboration. They would have said it in general, the first section, in withholding, just like they did in asylum, where they would have said it in the first section. They set forth the one central reason standard, but they didn't do that. And so the a reason language does not set forth a new standard. Congress would have done that differently. In fact, the because of standard language, which remains in the withholding statute, must be considered against the backdrop of settled law. The asylum and withholding had the same nexus standards. And Congress is assumed to legislate against that backdrop of settled law. So Congress could have put it in the withholding statute, probably erred in not putting it in the withholding statute, but assumed that the withholding law would follow asylum law, as it historically had. And that they erred by not putting it in. Doesn't that mean it's not there? It's not in the language, but an omission. It would have been better if they put it in. But I think it's implicit in that because of standard, which remains in the withholding statute, because of the backdrop of settled law, and because of that clear congressional intent. And Chevron deference applies to ambiguities. Actually, that's Chevron 2. I'm still on Chevron 1. So if you look at the backdrop of common law adjudicatory principles, the Supreme Court in Briscoe has talked about this. If we look at that backdrop, Congress assumed the nexus standards would stay the same for both areas of relief. As I mentioned, they're parallel provisions. Both require a nexus to a protected ground. The board has found that persecution equals the same as threat to life or freedom and withholding on account of an asylum is the same as because of in withholding. And as the judge mentioned, every asylum application is automatically considered an application for withholding under the regulation 1208. The immigration judge said it was applied to the central reason standard. Can the board then say, well, it's not a reason at all, if all the immigration judge concluded was that it's not a central reason? Both the immigration judge and the board said it was not a factor. I understand that. If the immigration judge said, if we restricted his holding, if we read it to say that all he's saying is it's not a central reason, can the board then expand that to say it's not a reason at all? The board doesn't have a de novo review on that issue. I understand that. The question is whether they have the authority to do that. I think there might be an argument that it was improper fact finding by the board if they had done that. But that's not the situation here because both said it wasn't a factor. The board doesn't have de novo review, so I don't think they could do that. So then, actually, I think the absurd results doctrine. What doctrine? Absurd results doctrine under Jennings and Crabtree, Supreme Court precedent in this court and Mendoza-Liba. I think it works in the government's favor because I don't think Congress had a rational basis for diverging between these two standards, especially when they were dissatisfied with that Borja case in the Ninth Circuit and the lower nexus standard. It doesn't make sense that they had a rational basis to do this. And as the Supreme Court held in Neguse, an omission is not dispositive where congressional intent can be discerned from context. Under Chevron 2, if this court finds the statute is ambiguous, the court should find that the board's interpretation is reasonable and the court should uphold it. Chevron is clear the agency has the authority to fill in any gaps in the act. Also, when a statute is silent, Chevron deference extends not only to the interpretation of an ambiguous tag, but also ambiguous silence, and that case is N. Turchi from the Supreme Court. I also have some comments on the standard of review. As far as the nexus standard of review, my opponent asks that the court disregard board precedent and also Fourth Circuit precedent. They both recognized that the nexus finding, the one central reason finding, is factual and should be reviewed by the board as clearly erroneous and by this court under the substantial evidence test. So my opponent doesn't put forth any evidence for his novel argument about this different nexus finding. Turkson, I completely agree the agency was very careful in correctly applying Turkson to the torture claim. I would like to clarify the government's argument on the torture claim. The decision in this case, specifically when you take a very close look at the board decision, we believe the board did do a de novo review of the definition of torture, because the board said on I believe the second page, based on the entirety of the record, petitioner has not been tortured in the past. Actually, the torture standard is very high. I understand. So based on the entirety of the record, the petitioner has not been tortured in the past. That's what the board said. He did not say it was being reviewed for substantial evidence. And so he said the threats and harm did not constitute torture. So we believe the board actually did apply both standards under Turkson correctly. Clear error for the likelihood of future torture and de novo for the definition of torture definition. Also, I'd just like to touch on the facilitation of return argument. My opponent asked this court to order the government to return a petitioner if he is successful in his petition for review for any reason. I'd just like to mention ICE lawfully removed the petitioner after the court denied his motion for a stay of removal. ICE has discretion on this issue and a very reasonable policy directive, in which it will facilitate return if the court decision led to the petitioner being a lawful permanent resident, or if he's needed for his removal proceeding. The government also notes there's no right to return in any statute. So the government concludes that based on this record, no reasonable fact finder would be compelled to conclude that petitioner's religion was a reason for his mistreatment by the gang, and therefore the court does not even need to address the one central reason issue. Thank you very much. Thank you, Your Honor. You have saved some time. The court does need to reach, regardless of how it resolved the asylum claim, the court does need to reach the withholding argument and whether a matter of CTL was correctly decided. And it must remain the record if it finds that the one central reason requirement does not apply to withholding claims. I think a helpful analogy comes from this court's cases involving whether the board applied the correct standard of review. So in Crespin, Turkson, and Upacha, the court found that the board applied the wrong standard of review, but did not then go on to reach the merits. It remained for further consideration under the correct standard rather than reach the merits itself. And again, that's what the Ninth Circuit did in Barajas-Romero when it found that matter of CTL was wrongly decided. Stepping back for a moment to the asylum claim, again, why my client was recruited we think is a red herring. All that matters is why he was forcibly tattooed and threatened with death, both him and his family were threatened with death after he refused. I think a helpful analogy can be drawn as to why we think his religion played, if not a central reason, at least a reason. Consider a case in which an asylum applicant was persecuted because he refused to eat pork. Now, if the applicant refused to eat pork simply because he did not like the taste of pork, clearly a protected ground would not be a central reason why he was persecuted. But if the applicant refused to eat pork because doing so would violate his religious beliefs, then we submit that his religion would serve, if not as a central reason, at least a reason why he was persecuted. Put differently, if Congress wanted aliens to qualify for asylum who were persecuted for practicing their religion, we see no reason why lawmakers would want to deny asylum to aliens who were persecuted who refused to subjugate their religious beliefs. If there are no further questions on the asylum application, just briefly on the cat claim, we think a remand is required for two reasons. First, the board held without any explanation that my client's mistreatment did not qualify as torture, but simply said in a footnote, the threats and harm to the respondent in the incident case did not constitute torture. And, Your Honor, your point is well taken about tattoos, but here my client was involuntarily tattooed at knife point while the gang threatened to kill him and his family. So it's not merely the tattooing itself, it's the confluence of factors which we think suggests that it did qualify as torture. Second, in terms of the standard of review, we think it again applied the wrong standard of review. What the board said, the board said the likelihood of torture is a question of fact that we review for clear error. That's on page four of the administrative record. That is flatly inconsistent with Turkson, which made clear that whether a respondent or petitioner would be tortured is a mixed question subject to de novo review. And finally, with respect to our request that the court order the government to facilitate my client's return, if it rules in his favor on any aspect of this case, we would just note that the court, this court granted such a request in Ramirez v. Sessions, 887F3693. That's a case that was decided after the briefs in this case were submitted. And to be clear, my client would not obtain any lawful immigration status. He would be placed back in detention while his claim remained pending before the agency. So we simply ask the court to order the government to place my client in the same position that he was in before the board dismissed his appeal. Unless there are any further questions. Thank you very much. Thank you, Your Honor.
judges: Robert B. King, Barbara Milano Keenan, John A. Gibney Jr.